## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MEDIPHARM - Rx, INC.

and

MEDCENTER PHARMACY, INC.

PLAINTIFFS,

Case No. 8:06-CV-02223-T-24EAJ

v.

ALBERTO R. GONZALES, in his official
capacity as Attorney General, United States
Department of Justice, and KAREN TANDY, in her
official capacity as the Administrator of the
United States Drug Enforcement Administration

DEFENDANTS.

_____/

## PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
## AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs, Medipharm - Rx, Inc. and Medcenter Pharmacy, Inc. (PLAINTIFFS), pursuant

to Rule 65(b) of the Federal Rules of Civil Procedure, and Rules 4.05 and 4.06 of the local rules

of the Middle District of Florida, move for the entry of a temporary restraining order against the

Defendants, the United States Drug Enforcement Administration(DEA), Alberto R. Gonzales, in

his official capacity as Attorney General, United States Department of Justice, and Karen Tandy,

in her official capacity as the Administrator of the United States Drug Enforcement

Administration, in order to protect PLAINTIFFS' rights to operate as retail pharmacies in

accordance with federal regulations, and to protect PLAINTIFFS's due process rights guaranteed

by the Fifth Amendment to the United States Constitution.



## INTRODUCTION

This is an action for declaratory and injunctive relief under Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201. PLAINTIFFS, pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, seek the entry of a temporary restraining order against the Defendants, in their official capacities as Attorney General, United States Department of Justice, and the Administrator of the United States Drug Enforcement Administration.

In this request, PLAINTIFFS only seek a temporary restraining order to preserve the status quo. That status quo would be the opportunity to defend against an Order to Show Cause issued by DEA on July 31, 2006. (Copy attached as Exhibit A). Hearing on that Order to Show Cause is currently set for January 8, 2007 and both the PLAINTIFFS and the DEA have filed Pre-hearing Statements in response to said Order to Show Cause. Before resolution of this pending matter, on November 14, 2006, the DEA issued an Immediate Suspension Order suspending Plaintiffs' Drug Enforcement Administration'(DEA) Certificates of Registration. (Copy attached as Exhibit B). Although the Immediate Suspension Order was entered on November 14, 2006, it was served on the PLAINTIFFS on November 20,2006.

This conduct has violated and is violating PLAINTIFFS's due process rights under the United States Constitution and the DEA's conduct constitutes an arbitrary, capricious, abuse of discretion, and is otherwise not in accordance with law. Forcing PLAINTIFFS to comply with the DEA's Suspension Order, without affording PLAINTIFFS the opportunity to be heard on this issue - as was occurring under the Order to Show Cause - would result in irreparable harm to PLAINTIFFS, as well as to its patients, and would constitute a violation of PLAINTIFFS's due process rights under the Fifth Amendment to the United States Constitution. Because DEA's

actions, in the filing of the Immediate Suspension Order, while the Order to Show Cause was being addressed does not allege any new facts, or facts not previously known to the DEA, they appear to be arbitrarily punitive or vindictive as a result of the Plaintiffs' response in defense of their actions, pursuant to the Order to Show Cause.

The alternative forms of relief sought by the PLAINTIFFS in this cause would be:

1.      The entry of an Order by this Court temporarily restraining the enforcement of the Immediate Suspension Order entered against the PLAINTIFFS, pending the resolution of the Order to Show Cause previously entered in this cause.

2.      The entry of an Order by this Court to temporarily restrain the enforcement of the Immediate Suspension Order entered against the PLAINTIFFS, pending an evidentiary hearing to determine the validity of the Immediate Suspension Order entered against the PLAINTIFFS.

## FACTUAL BACKGROUND

1      On July 31, 2006, the DEA issued an Order to Show Cause why DEA should not revoke Drug Enforcement Administration'(DEA) Certificates of Registration BN9038008, BM9038010, and BM9085487 as retail Pharmacies, pursuant to 21 U.S.C. §824(a)(4).

2.      Hearing on that Order to show Cause is currently set for January 8, 2007.

3.      PLAINTIFFS have also filed a Pre-hearing Statement in response to said Order to Show Cause.

4.      On November 14, 2006, the DEA issued an Immediate Suspension Order immediately suspending Plaintiffs' Drug Enforcement Administration'(DEA) Certificates of Registration BN9038008, BM9038010, and BM9085487 as retail Pharmacies, pursuant to 21

4

U.S.C. §824(a)(4). This Immediate Suspension Order was served upon the PLAINTIFFS on November 16, 2006.

5.      The Immediate Suspension Order issued November 14, 2006, incorporates by reference the Order to Show Cause issued July 31, 2006.

6.      Although the Immediate Suspension Order alleges that paragraphs two through ten of the Order "provide additional factual and legal matters [beyond the Order to Show Cause] that form the basis for this Immediate Suspension Order," all of the allegations in these paragraphs occurred months or years prior to the issuance of the Order to Show Cause and are therefore not new information as is stated or inferred.

7.      A portion of the allegations contained in the Immediate Suspension Order Occurred prior to the current ownership of the Plaintiff pharmacies.

8.      While the DEA's own allegations as contained in paragraph 10 of the Immediate Suspension Order acknowledge that "[t]here is no evidence that Medcenter was directly involved in certain acts alleged herein," PLAINTIFFS would submit that the only allegation in the Order to Show Cause or the Immediate Suspension Order that pertains to Medcenter is the allegation in paragraph 7 of the Order to Show Cause that the amount of hydrocodone purchased by Medcenter in the first five months of 2006 was "well beyond that expected of any Florida retail pharmacy." That is not a violation of any statute, code, or regulation. In addition, one of the three Certificates of Registration was for a pharmacy operated by the Plaintiffs that filled prescription drugs for local long term care facilities. There are absolutely no allegations contained in the initial Order to Show Cause nor the subsequent Immediate Suspension Order

5

that suggest any improper conduct in the operation of the pharmacy under this Certificate of Registration.

9.      Although PLAINTIFFS have regularly been inspected by both State and Federal regulatory agencies, at no time did DEA , or any agent, of any other regulatory agency, advise PLAINTIFFS, Medipharm Rx, Inc. and/or Medcenter Pharmacy, Inc. that its pharmacy practices did not comply with applicable law.

10.      As of the dates of the Order to Show Cause, and the Immediate Suspension Order the appropriate State licensing board or professional disciplinary authority had not recommended any change in the registration of Medipharm Rx, Inc. or Medcenter Pharmacy, Inc.

11.      As of the dates of the Order to Show Cause, and the Immediate Suspension Order neither PLAINTIFFS Medipharm Rx, Inc. nor Medcenter Pharmacy, Inc. had been convicted of any Federal or State laws relating to controlled substances.

12.      As of the date of the Order to Show Cause, and  the Immediate Suspension Order, neither PLAINTIFFS, Medipharm Rx, Inc. nor Medcenter Pharmacy, Inc. had engaged in any conduct which threatened the public health and safety.

13.      Both PLAINTIFFS, Medipharm Rx, Inc. and Medcenter Pharmacy, Inc. filled prescriptions issued by licensed physicians with valid DEA certificates.  Such prescriptions were issued for a legitimate medical purpose in the usual course of medical practice.

14.      The physicians whose prescriptions PLAINTIFFS, Medipharm Rx, Inc and Medcenter Pharmacy, Inc. filled, issued those prescriptions in the exercise of their clinical judgment based upon review of medical records, review of the patient's medical history and interaction with the patient.

15.     PLAINTIFFS,  Medipharm Rx, Inc. and  Medcenter Pharmacy, Inc do not market controlled substances via the internet.

16.     PLAINTIFFS, Medipharm Rx, Inc. and  Medcenter Pharmacy, Inc. do not write or originate prescriptions.

17.     There is no law prohibiting licensed pharmacies from dispensing prescription medications facilitated by the use of the internet or other electronic means.

18.     The DEA recognizes the beneficial role of the "online pharmacist."

19.     Neither PLAINTIFFS Medipharm Rx, Inc. nor Medcenter Pharmacy, Inc. has any contracts with physicians to perform telephone consultations with patients.

20.     The American Medical Association's Code of Ethics "are not laws, but standards of conduct which define the essentials of honorable behavior for the physician."

21.     PLAINTIFFS, Medipharm Rx, Inc. and Medcenter Pharmacy Inc. have specifically asked DEA Diversion Investigators and other regulators to identify what, if anything, they were doing which may be a violation of law.  DEA did not identify any actions by either Plaintiff which constituted a violation of applicable law.

22.     The DEA's orders effectively deprive PLAINTIFFS of their right to conduct lawful  business.

23.     This conduct  has violated and is violating  PLAINTIFFS's due process rights under the United States Constitution and the DEA's conduct constitutes an arbitrary, capricious, abuse of discretion, and is otherwise not in accordance with law.

24.     It is inconsistent with both the Constitution and the public interest for the DEA to deprive PLAINTIFFS of its property and its right to conduct business, without granting PLAINTIFFS the procedural due process required by the Constitution.

25.     PLAINTIFFS, its patients, and its employees will suffer irreparable injury if forced to comply with the DEA's unreasonable and unconstitutional demands.  PLAINTIFFS will suffer the potential loss of customers and will additionally be forced to pay employees without a means of income pending resolution of this matter or they will be forced to terminate and later attempt to rehire employees at additional expense.

26      Such an action, without affording PLAINTIFFS the right to due process as guaranteed by the Fifth Amendment of the United States Constitution, would impede PLAINTIFFS's constitutional rights in relation to its property.

27.     Granting temporary injunctive relief is in the public interest because forcing PLAINTIFFS to comply with the DEA's demands would result in undesirable clinical effects in the management of PLAINTIFFS's patients' medial conditions, because they would be deprived of their medication and would not be afforded reasonable notice so that they could make alternative arrangements for receipt of their medication.

28.     Pursuant to 5 U.S.C. §706(2), this Court has the statutory authority to hold unlawful and set aside the DEA's actions, findings, and conclusions because they are  contrary to PLAINTIFF's constitutional rights to due process and/or are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  Additionally, pursuant to 5 U.S.C. §704, this Court may review the DEA's actions because no other adequate remedy exists.

29.     Notice of this Motion has been provided to the Defendants, pursuant to Rule 4(I), Federal Rules of Civil Procedure, as set forth in the Certificate of Service below.

## MEMORANDUM OF LAW

**A.     <u>PLAINTIFFS are Entitled to the Entry of a Temporary Restraining Order</u>**

Pursuant to 5 U.S.C. § 706(2), this Court has the statutory authority to hold unlawful and set aside the DEA's actions, findings, and conclusions because they are contrary to PLAINTIFFS's constitutional rights to due process and/or are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Additionally, pursuant to 5 U.S.C. § 704, this Court may review the DEA's actions because no other adequate remedy exists. Under Rule 65 of the Federal Rules of Civil Procedure in determining whether the Plaintiffs are entitled to the entry of a temporary restraining order, the Court must consider the following four factors:

(1)  a substantial likelihood of success on the merits;

(2)  that irreparable injury will be suffered if the relief is not granted;

(3)  that the threatened injury outweighs the harm the relief would inflict on the non-movant; and

(4)  that the entry of the relief would serve the public interest. *Schiavo ex. Rel. Schindler v. Schiavo*, 403 F. 3d 1223, 1225-26 (11th. Cir. 2005). *See also: Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.* 51 F.3d 982, 985 (11th Cir. 1995); *Nnadi v. Richter*, 976 F.2d 682, 690 (11th Cir. 1992); *Future Tech Int'l v. Tae Il Media, Ltd.*, 944 F.Supp. 1538, 1532 (S.D. Fla. 1996). "No particular quantum of proof is required as to each of the four criteria." *Laboratorios Roldan*

*v. Tex Int'l, Inc.*, 902 F.Supp. 1555, 1565 (S.D. Fla. 1995). In light of the facts and issues

presented herein, the four factors favor the issuance of a temporary restraining order in this case.

**B.      PLAINTIFFS Will Succeed on the Merits of its Claims**

To issue injunctive relief, "a district court need not find that the evidence positively

guarantees a final verdict" in favor of the movant. *Levi Strauss & Co.*, 51 F.3d at 985.

PLAINTIFFS need only demonstrate a likelihood of success on the merits. The DEA did not

afford PLAINTIFFS the chance to respond to the DEA's initial Order to Show Cause. The DEA

alleges in part in their Order to Show Cause and Immediate Suspension Order that a prescription

can only be issued by a physician who has conducted a physical examination of a patient.

However, in a recent unpublished order, in this Court,  it was found that the movant had "a

substantial likelihood of success on the merits" in a case requesting a temporary restraining

order, based upon a finding that:

> In reviewing 21 C.F.R. §1306.04, it does not appear the regulations require a
> physical examination of a patient to effectuate the prescription of a controlled
> substance. 21 C.F.R. §1306.04 states in part, '[a] prescription for a controlled
> substance to be effective must be issued for a legitimate medical purpose by an
> individual practitioner acting in the usual course of his professional practice.' See
> 21 C.F.R. §1306.04(a). *United Prescription Services, Inc. V. Alberto Gonzales*,
> Case No. 8:06-cv-1977-T-30MAP (M. D. Fla. October 27, 2006) (Unpublished
> Amended Order and Notice of Hearing.  Copy attached as Exhibit C).

**C.      The Injury to PLAINTIFFS is Irreparable and Cannot Be Made Whole by Money
         Damages**

The DEA's actions  would result in irreparable injury to PLAINTIFFS that cannot be

made whole by monetary damages. First, if forced to comply with the DEA's orders,

PLAINTIFFS would be deprived of their constitutionally protected rights under the Fifth

Amendment to not have its property rights revoked, suspended or withdrawn, without granting

PLAINTIFFS due process. Enforcing the DEA's demands would be wholly inappropriate because the DEA's orders are entirely based on its own opinions and PLAINTIFFS have not been afforded the opportunity to defend themselves.

PLAINTIFFS, its employees, and its patients will suffer irreparable harm without injunctive relief because suspension of fulfillment of these medications for existing patients would cause an undesirable clinical affect in the management of their medical condition.  If the temporary restraining order is not granted, a portion of PLAINTIFFS's existing patients, who have come to rely upon PLAINTIFFS, will be denied the immediate and medically-necessary provision of their medication, without any notice, depriving them of the opportunity to make alternative arrangements for their medical needs.  Furthermore, not granting injunctive relief will also result in the loss of PLAINTIFFS's ability to dispense certain medications to certain patients and will taint PLAINTIFFS's reputation as a dependable pharmacy thereby causing it to incur an indeterminable amount of damages and lose a substantial portion of its client base, losses which cannot be reasonably calculated in any appreciable manner.

If PLAINTIFFS are forced to comply with the DEA's Immediate Suspension Order,  no action by this Court will be able to cure the serious damage to PLAINTIFFS or its patients.

**D.  There is No Potential Harm to the DEA if the Temporary Restraining Order is Granted**

Allowing PLAINTIFFS to continue its lawful business practices,  will not result in any harm to the DEA. DEA has  alleged that Plaintiff's practices present a threat to public safety, however, there is no conduct alleged in the Immediate Suspension Order that was not known to the DEA at the time the Order to Show Cause was issued.  The balance of hardships also favors granting the requested relief. This temporary restraining order will merely preserve the status

quo until the Court or an administrative law judge can determine the constitutionality and/or validity of the DEA's orders.

**E.      The Public Interest Will Be Served by Granting the Requested Relief**

Granting the temporary restraining order is in the public interest because forcing PLAINTIFFS to comply with the DEA's demands would result in undesirable clinical affects in the management of PLAINTIFFS's patients' medial condition, because they would be deprived of their medication and would not be afforded reasonable notice so that they could make alternative arrangements for receipt of their medication. If the Temporary Restraining Order is not granted, patients who come to Plaintiff in the immediate future expecting to obtain prescription refills will, at best, have to wait a significant amount of time for a new refill prescription to be formulated. This will result in these patients, who rely on their prescriptions to treat severe and often debilitating pain, facing the prospect of enduring a significant amount of time without their prescribed pain medications.

PLAINTIFFS seek a temporary restraining order to prevent the enforcement of the Immediate Suspension Order pending resolution of the Order to Show Cause previously issued to PLAINTIFFS. PLAINTIFFS only seek a temporary restraining order to preserve the status quo. There is a significant "public interest in preserving the *status quo ante litem* until the merits of a serious controversy can be fully considered by a trial court." *Blackwelder Furniture Co. of Statesville v. Selig Manufacturing Co.*, 550 F.2d 189, 197 (4th Cir. 1977). Obtaining this temporary restraining order is the only opportunity PLAINTIFFS have to avoid being stripped of their Fifth Amendment rights and to avoid irreparable harm to their as well as their patients in need of medication. The public interest clearly favors granting the requested relief.

Additionally, the health of PLAINTIFFS's patients creates a strong public interest in favor of granting the temporary restraining order.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be granted under these circumstances without written or oral notice to the adverse party or that party's attorney. Plaintiff will, consistent with its obligations under Rule 65, seek to serve Defendants with the complaint and related filings as expeditiously as possible.

**CONCLUSION**

PLAINTIFFS respectfully request that this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and the foregoing reasons, issue a temporary restraining order, prohibiting the DEA, ALBERTO R. GONZALES, in his official capacity as Attorney General, the United States Department of Justice, and KAREN TANDY, in her official capacity as the Administrator of the United States Drug Enforcement Administration from directly or indirectly enforcing the Immediate Suspension Order entered on November 14, 2006 and served upon the PLAINTIFFS on November 16, 2006.

Respectfully submitted,

Dale R. Sisco
DALE R. SISCO, P.A.
Florida Bar No.: 0559679
500 East Kennedy Blvd.
Suite 100
Tampa, Florida 33602
Phone: (813) 224-0555
Fax: (813) 221-9736
dsisco@sisco-law.com

13

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished in the

manner indicated herein to:

Alberto R. Gonzales
Attorney General United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
(by Certified U.S. Mail )


Paul Perez
United States Attorney, Middle District of Florida
400 North Tampa, Street, Suite 3200
Tampa, FL 33602
(by hand delivery and Certified U.S. Mail)


John F. Rudy, III
Assistant United States Attorney, Middle District of Florida
400 North Tampa, Street, Suite 3200
Tampa, FL 33602
(by hand delivery and Certified U.S. Mail)


Civil Process Clerk
Office of the United States
400 North Tampa, Street, Suite 3200
Tampa, FL 33602
(by Certified U.S. Mail)


Karen Tandy
Administrator of the
United States Drug Enforcement Administration
2401 Jefferson Davis Highway,
Alexandria, Virginia, 22301,
(by Certified U.S. Mail)


D. Linden Barber
United States Drug Enforcement Administration,
2401 Jefferson Davis Highway,
Alexandria, Virginia, 22301,
(by Certified U.S. Mail)

Wayne M. Patrick
Office of Chief Counsel,
United States Drug Enforcement Administration,
2401 Jefferson Davis Highway,
Alexandria, Virginia, 22301,
(by Certified U.S. Mail)

this _29TH_ day of November, 2006.

Dale R. Sisco