UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MEDIPHARM-RX, and**
**MEDCENTER PHARMACY, INC.,**

      **Plaintiffs,**

vs.                                          Case No.: 8:06-CV-2223-T-24EAJ

**ALBERTO R. GONZALES, in his official**
**capacity as Attorney General, United States**
**Department of Justice, and**
**KAREN TANDY, in her official capacity**
**as the Administrator of the United States**
**Drug Enforcement Administration,**

      **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

This cause comes on for consideration of **Plaintiffs' Amended Motion for Preliminary Injunction** (Dkt. 3) filed on December 1, 2006, and **Response in Opposition** (Dkt. 13) filed by the Attorney General of the United States and the Drug Enforcement Administration on December 12, 2006.[1] The undersigned held a hearing on the motion on December 14, 2006.

After considering the testimony and the exhibits admitted at the hearing, the undersigned recommends that preliminary injunctive relief be denied.[2]

---

[1] The District Judge referred the matter to the undersigned for a report and recommendation (Dkt. 4). See 28 U.S.C. § 636; Local Rules 6.01(b) and 6.01(c), M.D. Fla.

[2] Plaintiffs' Exhibits 2-14 and 16 were admitted at the December 14, 2006 hearing without objection. After consideration, Defendants' objections to Exhibit 15 are overruled. Exhibit 15 is the transcript of the hearing testimony of Edwin Bayo in a factually similar case also pending in the Middle District of Florida (8:06-CV-01977-JSM-MAP). The undersigned finds that Defendants' objections to Mr. Bayo's testimony are directed more to the weight of the testimony rather than to its admissibility.

1.     Background

Plaintiffs are pharmacies that are registered with the Drug Enforcement Administration ("DEA") to dispense controlled substances. Plaintiff Medipharm RX, Inc. is a pharmacy licensed in Florida and approximately 40 other states that primarily operates as an internet pharmacy (Dkt. 14 at 2). It also acts as a "closed pharmacy" supplying controlled substances and other medications to residents of long term care facilities in the Tampa Bay area. Plaintiff Medcenter Pharmacy is mainly a retail pharmacy that also does some internet business (Id. at 2-3).

On July 31, 2006, the DEA issued to Plaintiffs an Order to Show Cause why the DEA should not revoke Plaintiffs' Certificates of Registration as retail pharmacies under 21 U.S.C. § 824(a)(4), alleging that Plaintiffs' pharmacy practices did not comply with applicable law (Dkt. 3, Ex. A). The parties have scheduled a hearing on that Order to Show Cause for January 8, 2007, before an administrative law judge (Dkt. 14 at 4). Nevertheless, on November 14, 2006, the DEA issued to Plaintiffs an Immediate Suspension Order, which immediately suspends Plaintiffs' Certificates of Registration and prevents Plaintiffs from filling prescriptions pursuant to those Certificates (Dkt. 3, Ex. B).

On December 1, 2006, Plaintiffs filed an Amended and Verified Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction (Dkt. 3), which the District Judge granted on December 5, 2006 (Dkt. 4). On December 8, 2006, however, once Defendants responded to Plaintiffs' motion by filing a Motion for Revocation and Cancellation of Temporary Restraining Order (Dkt. 9), the District Judge dissolved the temporary restraining order (Dkt. 12). The District Judge found that Plaintiffs failed to establish all four elements necessary for the issuance of a temporary restraining order (Id.). In particular, the District Judge found that Plaintiffs

failed to establish a substantial likelihood of success on the merits because "Defendants presented unrefuted evidence that Plaintiffs have been filling prescriptions by having doctors prescribe controlled substances based on an online questionnaire without a physical examination in violation of federal law." (Id.)

It is against this procedural backdrop that Plaintiffs' request for preliminary injunctive relief is before the undersigned for the issuance of a report and recommendation. In addition to their request for a temporary restraining order, which the District Judge has ruled on, Plaintiffs request that the court enjoin the enforcement of the Suspension Order pending the resolution of administrative proceedings (Dkt. 3 at 4). In the alternative, Plaintiffs request that the court enjoin the enforcement of the Suspension Order pending an evidentiary hearing to determine its validity (Id.).

As discussed below, Plaintiffs' request for preliminary injunctive relief should be denied.

2.      Discussion

To determine whether to grant injunctive relief, a court must consider whether the movant has established: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Issuing a preliminary injunction is an extraordinary remedy and should be restricted to limited circumstances. Wedgewood Village Pharmacy, Inc. v. Ashcroft, 293 F.Supp.2d 462, 469 (D.N.J. 2003). The moving party bears the burden of proving that all elements required for an injunction are met. Id. In this case, Plaintiffs carry an especially heavy burden because in revoking the temporary

restraining order, the District Judge concluded that Plaintiffs are unlikely to succeed on the merits of their claims and cannot demonstrate irreparable injury.

Plaintiffs contend that the DEA's conduct in suspending their registrations constitutes an arbitrary and capricious abuse of discretion under the Administrative Procedures Act ("APA"), 5 U.S.C. §706(2), because the DEA is violating Plaintiffs' procedural and substantive due process rights under the United States Constitution (Dkt. 3 at 8). Plaintiffs advance two main arguments: first, Plaintiffs' business operations do not present an imminent danger to public health, as required by statute; second, Plaintiffs argue that the issuance of the Suspension Order is "wrong" because it is based on events that allegedly occurred prior to 2003, the year Plaintiffs took over operation of the businesses.

In response, Defendants point out that the dispositive issue is not whether Plaintiffs are likely to succeed at the January 8, 2007 administrative hearing but whether Plaintiffs are likely to succeed on the merits of their due process claims before this court.

As an initial issue, although Plaintiffs' emergency motion purports to assert due process claims against Defendants, these allegations are unsupported by a complaint as required by Fed. R. Civ. P. 3. The undersigned agrees with Defendants that Plaintiffs' failure to file a complaint in this case is grounds for dismissal. Plaintiffs filed their request for emergency injunctive relief under Fed. R. Civ. P. 65, in lieu of a complaint. Rule 65, however, does not provide an independent basis for federal jurisdiction. Absent a complaint or detailed affidavits filed by Plaintiffs, injunctive relief should not issue.

The court is unpersuaded by Plaintiffs' reliance on <u>Norman Bridge Drug Company v.</u>

Banner, 529 F.2d 822 (5th Cir. 1976),[3] which does not address the necessity of filing a complaint. In fact, in Norman Bridge, the drug store plaintiffs accompanied their request for a temporary restraining order with a complaint. Id. at 825. The government defendants challenged the complaint as failing to state a cause of action; nevertheless, a complaint was filed. Id.

However, assuming arguendo that Plaintiffs' failure to file a complaint is not grounds for dismissal, another threshold concern is whether this court has subject matter jurisdiction over Plaintiffs' claims. In the context of their due process arguments, Plaintiffs appear to assert that the Suspension Order is final agency action reviewable under the APA by a federal court. Plaintiffs then cite 21 U.S.C. § 824(d), which provides in pertinent part:

> A suspension under this subsection shall continue in effect until the conclusion of such proceedings (to revoke), including judicial review thereof, unless sooner withdrawn by the Attorney General or *dissolved by a court of competent jurisdiction*.

21 U.S.C. § 824(d) (emphasis added); 21 C.F.R. § 1301.36(h) (same).

Defendants do not concede that the Suspension Order represents final agency action under the APA. Additionally, they point out that jurisdiction to review the DEA's action, when it is final, rests exclusively with the Court of Appeals under 21 U.S.C. § 877, which states:

> [A]ny person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located . . .

The Norman Bridge court briefly considered the matter of whether § 824(d) contemplates a federal district court dissolving a suspension order issued by the DEA prior to the conclusion of administrative proceedings. 529 F.2d at 828. On the same day the DEA suspended the plaintiff's

---

[3] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

license in Norman Bridge and ordered it to show cause why its license should not be revoked, the plaintiffs filed a complaint and a request for a temporary restraining order in district court. Id. at 825. The district court issued a restraining order because it found that the plaintiff's business did not pose an imminent danger to public health. Id.

On appeal, however, the chief issue in Norman Bridge was the validity of a contempt order entered by the district judge against the DEA. The former Fifth Circuit upheld the contempt order and the preliminary injunction, focusing not on whether the district court possessed jurisdiction over such actions but whether the DEA had demonstrated an imminent harm to the public as required by statute. Id. at 827-29; but see Neil Lab., Inc. v. Ashcroft, 217 F.Supp.2d 80, 85 (D.D.C. 2002) (citing Norman Bridge to support the proposition that the Controlled Substances Act "signifies that a registrant subject to immediate suspension of registration may seek judicial review by a district court before the suspension order becomes final").

Additionally, the violations in Norman Bridge were remote in time and involved the sale of 100 Diphex tablets to one individual without a prescription. 529 F.2d at 826. In this case, the government alleges, among other things, that Plaintiffs ordered 14,228,290 dosage units of hydrocodone, a schedule III controlled substance, from January 1, 2006, to September 22, 2006, and that Plaintiffs ordered 13,516,410 dosage units of hydrocodone after the DEA issued the show cause order (Dkt. 3, Ex. B at 3). Further, the Suspension Order alleges that Plaintiffs' conduct in 2005 and 2006 in shipping controlled substances into California violated state law.[4] (Id.)

Nevertheless, the court does not need to resolve the question of whether the issuance of a

---

[4] Failure to comply with state law is another statutory basis for revocation of a DEA registration under 21 U.S.C. § 823(f)(4).

suspension order pending an administrative hearing on a show cause order can be construed as final agency action because Plaintiffs purport to assert due process claims against Defendants under the United States Constitution. Thus, the court arguably has subject matter jurisdiction under 28 U.S.C. § 1331 to hear this case, assuming the proper pleading were filed. See Wedgewood Village Pharmacy, 293 F.Supp.2d at 468 (holding that subject matter exists when pharmacy plaintiff alleges the DEA violated its due process rights by revoking its license to dispense to patients and receive from vendors any controlled drugs).

Turning to the merits of Plaintiffs' procedural due process allegations, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). Plaintiffs' procedural due process arguments are poorly framed. Plaintiffs conflate the issue of whether they are likely to succeed on their due process claims with whether a physician who has not conducted a physical examination of a patient can issue a prescription under the Controlled Substances Act and applicable regulations. The latter issue is properly before the administrative law judge and will be the focus of the January 8, 2007 hearing. Moreover, Plaintiffs do not challenge the regulatory scheme in place that governs the DEA's denial, revocation, and suspension of registrations issued to dispensers of controlled substances. What Plaintiffs do allege is that the DEA incorrectly interpreted the facts surrounding the ownership and operation of their pharmacies and that the DEA issued the Suspension Order in error.

Plaintiffs are not likely to prevail on the merits of their procedural due process claim. First, as noted earlier, the Suspension Order does not cite to only pre-2003 events. It also includes allegations that Plaintiffs dispensed an abnormally high volume of controlled substances in 2006 and

shipped controlled substances into California in 2006 in violation state law (see Dkt. 3, Ex. 2). The prior violations serve as a backdrop to the events that culminated in the DEA's issuance of the Suspension Order. See, e.g., Easy Returns Worldwide, Inc. v. United States, 266 F.Supp.2d 1014, 1021 (E.D. Mo. 2003) (holding that the DEA did not abuse its discretion when the basis of its decision to suspend was "an ongoing examination of the continued violations prior to and during the decision making process"). Second, Plaintiffs are in the process of adjudicating the validity of the Suspension Order administratively. Although 21 U.S.C. 824(d) and 21 C.F.R. § 1301.36(h) envisage that a court of "competent jurisdiction" may dissolve a suspension order, Plaintiffs here have not made a meritorious argument that Defendants have violated their due process rights. Therefore, the undersigned recommends that injunctive relief be denied on Plaintiff's procedural due process claim.

Further, Plaintiffs have not articulated the basis of their substantive due process argument. "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" Greenbriar Village, LLC v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003) (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc), cert. denied, 513 U.S. 1110 (1995)). In analyzing a substantive due process claim, the process is two-fold. First, the court considers whether Plaintiffs have alleged a deprivation of a right that is, objectively, "'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Williams v. Attorney Gen. of Alabama, 378 F.3d 1232, 1239 (11th Cir. 2004), cert. denied, 543 U.S. 1152 (2005) (quoting Washington v. Glucksberg, 521 U.S. 702, 721 (1997)). Second, in substantive due process cases, courts require a "careful description" of the

asserted fundamental right. Reno v. Flores, 507 U.S. 292, 302 (1993); see, e.g., Tinker v. Beasley, 429 F.3d 1324, 1327 (11th Cir. 2005). To meet this burden, Plaintiffs must demonstrate that the government action is "conscience-shocking." County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998).

An extensive review of Plaintiff's substantive due process claim is not justified by the conclusory nature of the claim. In short, Plaintiffs have not alleged that either their interest in continuing to operate during the pendency of the administrative proceedings, their interest in their inventory, or their interest in the Certificates of Registration are fundamental rights. Therefore, Plaintiffs have failed to establish the violation of a liberty or property interest protected by the United States Constitution. Also, DEA's action in enforcing 21 U.S.C. § 824 and serving Plaintiffs with the Suspension Order, even though it occurred after Plaintiffs had scheduled an administrative hearing on the Show Cause Order, is not so arbitrary or irrational as to violate due process. See Lingle v. Chevron, U.S.A., Inc., 544 U.S. 528, 542 (2005) (citation omitted) (stating that a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause).

The DEA has a valid public purpose in halting the alleged diversion of controlled substances, as outlined in the Suspension Order. Therefore, Plaintiffs have not established a likelihood of success on their allegations of a substantive due process deprivation. The undersigned also recommends that injunctive relief be denied on Plaintiffs' substantive due process claim.

Because Plaintiffs have failed to establish a likelihood of success on the merits, no evaluation of the remaining factors for injunctive relief is required. However, even assuming a likelihood of success on the merits had ben shown, Plaintiffs have not demonstrated that they will be irreparably

harmed and are unable to be compensated by money damages. Although Plaintiffs do assert that the loss of goodwill will irreparably harm their businesses, the evidence supporting this is minimal at best. Further, as the District Judge pointed out, any harm to Plaintiffs' reputations as dependable pharmacies may be rectified with a monetary award (Dkt. 12 at 5).

The final two factors in the injunctive relief analysis – the balance of hardships and the public interest – also favor Defendants. According to Defendants, Plaintiffs have distributed tremendous amounts of hydrocodone to the public in violation of DEA regulations requiring that prescriptions be issued in the usual course of a professional practice. The public's interest in the DEA's enforcement of laws governing controlled substances outweighs Plaintiffs' interest in maintaining the status quo (as it existed prior to the issuance of the Suspension Order) until January 8, 2007, or the resolution of the administrative proceedings.

Therefore, for the reasons stated above, the undersigned recommends that Plaintiffs' request for preliminary injunctive relief be **DENIED**.

Dated: January 4, 2007

ELIZABETH A JENKINS
United States Magistrate Judge

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained

in this report within ten (10) days from the date of this service shall bar an aggrieved party from

attacking the factual findings on appeal.  <u>See</u> 28 U.S.C. 636 (b)(1).